**In re STATEPARK BUILDING GROUP, LTD., et al., Debtors.**

No. 04–33916 HDH–11.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 20, 2004.

Opinion issued June 4, 2004.

Davor Rukavina, Mark H. Ralston, Munsch, Hardt, Kopf & Harr, P.C., Dallas, TX, for Debtors.

Anthony A. Petrocchi, Anthony A. Petrocchi, P.C., Dallas, TX, for Pat Pillitteri, Patcan Texas, Inc., and Patcan Nevada, Inc.

C. Thomas Wesner, Jr., Wesner, Coke & Clymer, Dallas, TX, for William V. Brown and W. Brown Properties, Inc.

### ORDER DENYING MOTIONS TO DISMISS BANKRUPTCY CASES OR, IN THE ALTERNATIVE, TO ABSTAIN AND GRANTING THE DEBTORS' MOTION FOR DECLARATORY RELIEF

HARLIN D. HALE, Bankruptcy Judge.

On April 5, 2004, petitions under Chapter 11 of the Bankruptcy Code were filed on behalf of each of the debtors in these jointly administered bankruptcy cases, namely StatePark Building Group, Ltd. ("StatePark"), StatePark Colleyville, Ltd. ("Colleyville"), Blackburn/Travis/Cole, Ltd. ("Blackburn"), Portobello, Ltd. ("Portobello"), and Colonnade on Turtle Creek, L.P. ("Colonnade," together with StatePark, Colleyville, Blackburn, and Portobello, the "Debtors"). Prior to the petition date, each of the Debtors had been the subject of a state court receivership in the 14th Judicial District Court of Dallas County, Texas. The receivership orders were entered by the state court on or about October 2, 2003. In each of the state court orders creating the receiverships over the Debtors, the state court judicially dissolved the Debtor limited partnerships and appointed Worth Ross as receiver (the "Receiver"). After proceeding for six months in the state court receivership, the

Receiver filed the instant bankruptcy petitions, seeking to liquidate the Debtors under the provisions of Chapter 11. Pat Pillitteri, Patcan Texas, Inc., and Patcan Nevada, Inc. (collectively, the "Pillitteri Movants") filed an Amended Motion to Dismiss Case with Memorandum of Authorities, and William V. Brown and W. Brown Properties, Inc. (together, the "Brown Movants" and, with the Pillitteri Movants, the "Movants") filed a Motion to Dismiss or, While Still Insisting on Dismissal, in the Alternative, to Abstain and Suspend the Case, and Brief in Support Thereof (the motions collectively referred to as the "Motions to Dismiss or Abstain"). In the Motions to Dismiss or Abstain, the Movants cite three reasons why this Court should dismiss the bankruptcy cases: 1) the Receiver did not have authority to file the petitions on behalf of the Debtors, 2) the Debtors were not eligible to be debtors in these cases, and/or 3) the Receiver filed the petitions in bad faith. In the alternative, the Movants seek an order from this Court abstaining from exercising its jurisdiction so that the liquidation of the Debtors could proceed in the context of the state court receiverships. The Debtors have, by motion, requested declaratory relief regarding the authority of the Receiver to file the bankruptcy petitions on behalf of the Debtors and the eligibility of the Debtors to be debtors under the Bankruptcy Code. Extensive hearings were held on the Debtors' motion for declaratory relief and on the Motions to Dismiss or Abstain on April 30 and May 17, 2004.

Having considered the arguments of each of the parties and the applicable law, the Court finds the following: (1) the Receiver had authority to file petitions for relief under the Bankruptcy Code on behalf of the Debtors, (2) each of the Debtors is eligible to be a debtor under the Bankruptcy Code, (3) the petitions were not filed in bad faith, and (4) the Court will not abstain from exercising its jurisdiction over these Debtors to allow the Debtors to be liquidated in the state court receiverships. The Court reserves the right to make additional finding of fact and conclusions of law and to issue a written opinion. Consistent with these findings,

**IT IS ORDERED** that the Amended Motion to Dismiss Case filed by the Pillitteri Movants and the Motion to Dismiss or, While Still Insisting on Dismissal, in the Alternative, to Abstain and Suspend the Case filed by the Brown Movants be, and hereby are, **denied;**

**IT IS FURTHER ORDERED** that the Debtors' Motion for Declaratory Relief be, and hereby is, granted in that the Court finds that the Receiver had the authority to file the bankruptcy petitions on behalf of the Debtors and that each of the Debtors is eligible to be a debtor under the Bankruptcy Code.

It is so ordered.

### *MEMORANDUM OPINION REGARDING ORDER DENYING MOTIONS TO DISMISS BANKRUPTCY CASES OR, IN THE ALTERNATIVE, TO ABSTAIN AND GRANTING THE DEBTORS' MOTION FOR DECLARATORY RELIEF*

On April 5, 2004, petitions under Chapter 11 of the Bankruptcy Code were filed on behalf of each of the debtors in these jointly administered bankruptcy cases, namely StatePark Building Group, Ltd. ("StatePark"), StatePark Colleyville, Ltd. ("Colleyville"), Blackburn/Travis/Cole, Ltd. ("Blackburn"), Portobello, Ltd. ("Portobello"), and Colonnade on Turtle Creek, L.P. ("Colonnade," together with StatePark, Colleyville, Blackburn, and Portobello, the "Debtors"). Prior to the petition date, each of the Debtors had been the subject of a state court receivership in the 14th

Judicial District Court of Dallas County, Texas. The receivership orders were entered by the state court on or about October 2, 2003. Worth Ross (the "Receiver") was appointed as receiver over each of the Debtor entities. After proceeding for six months in the state court receivership, the Receiver filed the instant bankruptcy petitions, seeking to liquidate the Debtors under the provisions of Chapter 11. Pat Pillitteri, Patcan Texas, Inc., and Patcan Nevada, Inc. (collectively, the "Pillitteri Movants") filed an Amended Motion to Dismiss Case with Memorandum of Authorities, and William V. Brown and W. Brown Properties, Inc. (together, the "Brown Movants" and, with the Pillitteri Movants, the "Movants") filed a Motion to Dismiss or, While Still Insisting on Dismissal, in the Alternative, to Abstain and Suspend the Case, and Brief in Support Thereof (the motions collectively referred to as the "Motions to Dismiss or Abstain"). In the Motions to Dismiss or Abstain, the Movants cited three reasons why this Court should dismiss the bankruptcy cases: 1) the Receiver did not have authority to file the petitions on behalf of the Debtors, 2) the Debtors were not eligible to be debtors in these cases, and/or 3) the Receiver filed the petitions in bad faith. In the alternative, the Movants sought an order from this Court abstaining from exercising its jurisdiction so that the liquidation of the Debtors could proceed in the context of the state court receiverships. The Debtors had, by motion, requested declaratory relief regarding the authority of the Receiver to file the bankruptcy petitions on behalf of the Debtors and the eligibility of the Debtors to be debtors under the Bankruptcy Code.

Extensive hearings were held on the Debtors' motion for declaratory relief and on the Motions to Dismiss or Abstain on April 30 and May 17, 2004. The Court issued an order denying the Motions to Dismiss or Abstain and granting the Debtors' motion for declaratory relief on May 20, 2004 ("May 20 Order"). In the May 20 Order, the Court found that (1) the Receiver had authority to file petitions for relief under the Bankruptcy Code on behalf of the Debtors, (2) each of the Debtors is eligible to be a debtor under the Bankruptcy Code, (3) the petitions were not filed in bad faith, and (4) the Court will not abstain from exercising its jurisdiction over these Debtors to allow the Debtors to be liquidated in the state court receiverships. This memorandum opinion is entered in connection with and in support of the May 20 Order.

### Authority of the Receiver to File a Bankruptcy Petition

■■■ The Movants argue that the Receiver did not have authority to file the bankruptcy petitions on behalf of the Debtors. The Bankruptcy Code does not prescribe who has the authority to file a petition on behalf of a Debtor. Because the Debtors are entities created under state law, the Court must look to state law to determine the authority issue. *See Phillips v. First City, Texas–Tyler, N.A. (In re Phillips)*, 966 F.2d 926, 934 (5th Cir.1992)("Without further direction from Congress, we will continue to look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created business entities.").

All of the Debtors are limited partnerships created under Texas law. Under Texas law and the partnership agreements creating these limited partnerships, the general partner or general partners of each of the limited partnerships had the management authority over and the power to act on behalf of the Debtors. However, as a result of certain actions taken in state court against the Debtors, the Debtors

were placed in receiverships. As noted above, the state court appointed Worth Ross ("Ross" or "Receiver") as receiver over each of the Debtor entities. In the order placing StatePark in receivership, the state court specifically provided for the judicial dissolution of StatePark. Although the receivership orders regarding the remaining debtors did not specifically declare that they be judicially dissolved, the appointment of the Receiver for the purposes of liquidating the limited partnerships had the effect of dissolving the limited partnerships.

■■■ Under Texas law, the appointment of a general receiver displaces and supercedes in its entirety the pre-receivership management of an entity. *See Murphy v. Argonaut Oil Co.,* 23 S.W.2d 339, 342 (Tex.1930)(The president of an entity in receivership had no control or authority over the entity. For all practical purposes the authority of the officers of the corporation was entirely superseded by the receivership.); *see also Chitex Communication, Inc. v. Kramer,* 168 B.R. 587, 590 (S.D.Tex.1994)("Texas law asserts that the receiver has the full rights that the corporation had.") (citations omitted). Thus, when a general receiver is appointed by state court to wind up the affairs of a limited partnership, the receiver acts as management of the entity over which he has been appointed and has the authority to act for and on behalf of the limited partnership. *See* Tex.R. Civ. Stat. Ann. art. 6132a–1, § 8.04(b). In each of the receivership orders here, Ross was "empowered to do any and all acts necessary to the proper and lawful conduct of the receivership" including, *inter alia,* the power "[t]o take charge and keep exclusive possession free from the interference by any other person or entity of all assets and property of [the particular Debtor]," "[t]o act as liquidator," and "[t]o liquidate all

assets, including real property." The receivership orders further provided that "the Receiver is authorized to … incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses …." The receivership orders do not prohibit the Receiver from filing bankruptcy petitions on behalf of the Debtors. It appears that under Texas law and the orders appointing the Receiver over these particular debtors that the Receiver had the authority to act on behalf of the Debtors in filing the bankruptcy petitions.

Fortunately, this court does not write on a clean slate regarding the authority of a state court receiver to file a bankruptcy petition on behalf of a limited partnership. In *In re Monterey Equities–Hillside,* 73 B.R. 749 (Bankr.N.D.Cal.1987), a well respected bankruptcy judge addressed the question. In that case, like the present one, a state court appointed receiver filed a voluntary Chapter 11 proceeding and claimed his authority arose from the order of appointment as receiver. According to Judge Perris, since the state court authorized the receiver to mange the partnership, he also had the authority to commence a bankruptcy case. *Id.* at 752.

Closer to home, at least one Texas bankruptcy and District Court have considered the authority of a receiver to file a bankruptcy petition in a corporate context. In *Chitex Communication, Inc. v. Kramer,* 168 B.R. 587, 590 (S.D.Tex.1994), the United States District Court affirmed a bankruptcy court's dismissal of a corporate bankruptcy case initiated by the president after a state court receivership had been installed. According to the District Court, the corporation's president lacked authority to file a bankruptcy case because after the receiver was appointed only the receiver had the authority to place the debtor into bankruptcy. *See, id.* at 590.

In the present case, the Receivership Orders are fairly broad in the powers given to the receiver. The orders expressly provide that the receiver "is empowered to do any and all acts necessary to the proper and lawful conduct of the receivership." He is expressly authorized to "act as liquidator" and to "liquidate all assets, including real property." While not as express as the *Monterey Equities–Hillside* order on the authority to file a bankruptcy petition, the power to manage and liquidate the property of the Debtors granted to the Receiver under both Texas law of receiverships and the specific orders appointing the Receiver over these Debtors certainly includes the authority to file a liquidation Chapter 11 case.

### *Eligibility of the Debtors to File Chapter 11 Petition*

The Movants also question whether the Debtors are eligible to be debtors in a Chapter 11 bankruptcy. Movants assert that the state court orders dissolved the limited partnerships. They argue that once the limited partnerships were dissolved under state law, they no longer qualified to be debtors under the Code. The fact that the limited partnerships were dissolved before the bankruptcy cases were filed does not end the inquiry on eligibility.

■■ Under the Bankruptcy Code "a person that may be a debtor under chapter 7 of this title ... may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d). With a few exceptions not applicable here, a "person" may be a debtor under Chapter 7. 11 U.S.C. § 109(b). A "person" is defined to include an "individual, partnership, and corporation ...." 11 U.S.C. § 101(41). The Bankruptcy Code does not expressly address whether a dissolved state-created entity is eligible to be a debtor. Thus, similar to the authority

question above, the Court must look to state law to determine the eligibility question. *See In re ABZ Ins. Servs., Inc.* 245 B.R. 255, 257 (Bankr.N.D.Tex.2000)("Whether a dissolved corporation is eligible to be a debtor in bankruptcy is determined by reference to state law.")(quoting *In re A Car Rental,* 166 B.R. 869, 870 (Bankr.S.D.Tex.1993)). Under Texas law, a dissolved limited partnership remains in existence for a period of time after the dissolution to allow for the "winding up" of the affairs of the limited partnership. Tex.Rev.Civ. Stat. Ann. art. 6132b–8.02 (Vernon 2004 Supp.)("A partnership continues after the occurrence of an event requiring winding up until the winding up of its business is completed, at which time the partnership is terminated."). The question, then, is whether a dissolved Texas partnership maintains sufficient existence during its winding up period to be eligible for relief under Chapter 11.

The Movants cite *In re C–TC 9th Ave. P'ship,* 193 B.R. 650 (Bankr.N.D.N.Y. 1995), aff'd *C–TC 9th Ave. P'ship v. Norton Co.,* 196 B.R. 666 (N.D.N.Y.1996), aff'd, 113 F.3d 1304 (2nd Cir.1997), for the proposition that a dissolved New York partnership is not eligible for relief under Chapter 11 of the Bankruptcy Code. In *C–TC,* the bankruptcy court dismissed the bankruptcy of a general partnership formed under New York law on the grounds that it had been filed in bad faith and that the dissolved partnership was not eligible to be a debtor in Chapter 11. With respect to the eligibility question, the bankruptcy court found that, under New York law, a dissolved partnership was required to "wind up" its affairs and to liquidate and that, unlike a dissolved corporation, it did not have the option for reinstatement under state law. Because the debtor was attempting to reorganize under Chapter

11—something it was not allowed to do under state law—the bankruptcy court held that the dissolved partnership was not eligible for relief under Chapter 11 and dismissed the bankruptcy case. *C–TC,* 193 B.R. at 653–54. The district court affirmed. The Court of Appeals also affirmed, concluding that, because *C–TC* was prevented from continuing in business under New York law, it "is not a 'person' eligible to avail itself of reorganization in Chapter 11." 113 F.3d at 1309. For the first time on appeal, *C–TC* argued that even if it could not reorganize, it could liquidate under Chapter 11. The Court of Appeals ruled that *C–TC* had waived this argument but went on to say, in dictum,

> [W]hile a debtor may conclude Chapter 11 proceedings by liquidating, and may even enter them with the intent to liquidate if necessary, there is no reason a debtor should be permitted to enter these proceedings without a possibility of reorganization. *C–TC* has not claimed that there was (or is) any possibility of reorganization here. Hence, although the issue is waived, we believe that it is, in any event, without merit.

*Id.* Subsequent to the *C–TC* decision, two bankruptcy judges in the bankruptcy court for the Southern District of New York were faced with the issue of whether a dissolved New York partnership is eligible for relief under Chapter 11. In the first case, *In re Shea & Gould,* 214 B.R. 739 (Bankr.S.D.N.Y.1997), the debtor, a dissolved New York partnership, filed a petition for relief under Chapter 11 with the stated intent "to file a plan of liquidation under chapter 11 of the Bankruptcy Code." *See id.* at 741. A party moved for dismissal of the bankruptcy case on the grounds that Shea & Gould was not a "person" eligible for Chapter 11 relief. In denying the motion, Judge Garrity held that a dissolved New York partnership is eligible to be a debtor under Chapter 11 where the partnership pursues liquidation. *Id.* at 747. The court distinguished *C–TC* on the grounds that *C–TC* involved a dissolved partnership that sought to *reorganize* rather than *liquidate* under Chapter 11. *Id.* at 744. The court declined to follow the dictum of the *C–TC* court that indicated that a dissolved partnership would not be eligible for relief under a liquidating Chapter 11 either. *Id.* at 745. The court surmised that were the Second Circuit to be faced with the issue again, it would not bar a dissolved partnership from liquidating in a Chapter 11. *Id.* The court stated that a ruling that would bar a dissolved partnership from filing a Chapter 11 would "fl[y] in the face of the statute which authorizes a partnership to be a chapter 11 debtor, *see* 11 U.S.C. § 101(41), 109, permits the filing of involuntary chapter 11 cases against partnerships in dissolution, *see id.* § 303, and sanctions liquidating chapter 11 plans. *Id.* § 1123(b)(4)." *Id.* at 745–46 (quoting the language of § 1123(b)(4) and citing, *inter alia, In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1352 (5th Cir.), *reh'g denied,* 881 F.2d 1346 (5th Cir.1989)).

The second case to address the issue of whether a dissolved New York partnership is eligible to be a debtor in a liquidating Chapter 11 was *In re Hagerstown Fiber Ltd. P'ship,* 226 B.R. 353 (Bankr.S.D.N.Y. 1998). In *Hagerstown,* Judge Bernstein followed the dictum in *C–TC* in ruling that a dissolved partnership is not eligible for relief under Chapter 11 either to reorganize or to liquidate. *Id.* at 358. Although he seemed to agree with his fellow judge in the Southern District that a liquidation in Chapter 11 should be available to a dissolved partnership, he felt bound by *C–TC's* general holding that a dissolved New York partnership is not a "person" for purposes of Chapter 11. *Id.* The court therefore held that the debtor was not

eligible for relief in Chapter 11, even to liquidate. *Id.*

■ Thus, even the bankruptcy courts in the Second Circuit are split on whether the Second Circuit would permit a dissolved partnership to liquidate through a Chapter 11. Although this Court agrees with the *Shea & Gould* analysis, it does not need to rely on it. First, this Court is certainly not bound by dictum of a Court of Appeals decision not in this circuit. More importantly, this Court believes that the case law in the Fifth Circuit and Texas law on partnerships distinguishes this case from the cases in the Second Circuit. As the *Shea & Gould* court pointed out, the Bankruptcy Code authorizes a partnership to be a debtor and authorizes an involuntary petition to be filed against a dissolved partnership. *See* 11 U.S.C. §§ 101(41), 109, 303. The Code also expressly authorizes liquidating plans under Chapter 11. 11 U.S.C. § 1123(b)(4). The Fifth Circuit has recognized that a liquidation through a Chapter 11 is appropriate. *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1352 (5th Cir.1989)("It is clear ... that although Chapter 11 is titled 'Reorganization,' a plan may result in the liquidation of the debtor."). The Fifth Circuit was addressing the concern expressed from the bankruptcy court that "the plan's primary purpose did not appear to be an effort to reorganize Sandy Ridge as a viable economic entity, and thus ran counter to the overall scheme of Chapter 11." *Id.* The Fifth Circuit recognized that the liquidation of a state-created entity through a Chapter 11 was not only authorized, but specifically contemplated by Congress when it enacted the Code. *Id.*

In a later case, the Fifth Circuit addressed the issue of whether a general partner of a dissolved Texas partnership had the authority to file a petition for relief under Chapter 11 on behalf of the partnership. *Phillips v. First City, Texas (In re Phillips)*, 966 F.2d 926 (5th Cir. 1992). The Court found that under Texas law, the general partner of the Debtor, who was himself a debtor in bankruptcy, did not have authority to file the petition on behalf of the partnership because Texas law provided that a "partnership is in no case bound by any act of a partner after dissolution ... [w]here the partner has become bankrupt." *Id.* at 929 (citing Tex. Rev.Civ. Stat. Ann. art. 6132b § 35(3)(b)(Vernon 1970)). Although it was not specifically addressed, the court's discussion of whether a general partner who was a debtor under Chapter 11 would be considered a "bankrupt" under Texas law and therefore lack the *authority* to file a petition under Chapter 11 on behalf of a dissolved Texas partnership seemed to assume that the dissolved partnership itself was at least eligible to be a debtor under Chapter 11 had a person with authority under state law to act on behalf of the partnership filed the petition. The Court indicated that it must look to state law to determine issues of authority to file and eligibility. *Id.* at 934 (quoting H.R. 8200, H.R. REP. No. 598 at 196, *reprinted in,* 1978 U.S.C.C.A.N. at 6157: *"Title 11* does not define 'partner' or 'partnership'; the definitions are left to nonbankruptcy law as construed by the bankruptcy court.")(alteration in original). In reaching its conclusion that a general partner in a Chapter 11 would be considered a "bankrupt" under Texas law, the Fifth Circuit stated, "[W]e would create an unnecessary loophole in Texas partnership law by interpreting it to treat those who seek Chapter 7 protection differently from those who seek Chapter 11 protection." *Id.* at 931.

■ The Movants do not suggest, nor has the Court found any authority to support such a suggestion, that a dissolved

Texas partnership is not eligible for relief under *Chapter 7* of the Bankruptcy Code. Because this Court is admonished by the Fifth Circuit not to treat a partnership that seeks Chapter 7 protection differently from a partnership that seeks Chapter 11 protection, this Court sees no reason why Texas law would prevent a dissolved partnership from seeking to liquidate under Chapter 11. In addition, the Texas Revised Limited Partnership Act ("TRLPA") specifically contemplates that a partnership may wind up its affairs in a Chapter 11. Section 2.06(a)(4) of the TRLPA states,

> (a) Notwithstanding any other provisions of this Act to the contrary, to carry out *a plan of reorganization* ordered or decreed by a court of competent jurisdiction *under federal statute,* a domestic limited partnership *being reorganized under a federal statute* may without action by or notice to its partners:

> .    .    .    .    .

> (4) cancel its certificate on completion of winding up of the limited partnership.

Tex.Rev.Civ. Stat. Ann. art. 6132a–1, § 2.06(a)(4)(Vernon Supp.2004). Although this provision appears to contemplate that the limited partnership's certificate would have been valid at the time of the filing of the bankruptcy petition, the Texas legislature, in enacting § 2.06, clearly thought that a liquidating Chapter 11 would be an appropriate vehicle for winding up the partnership's affairs. *Cf. In re ABZ Ins. Servs., Inc.,* 245 B.R. 255, 262 (Bankr. N.D.Tex.2000)(where, in holding that a dissolved corporation was eligible to be a debtor in Chapter 7, the court stated, "Filing bankruptcy is the functional equivalent of an action under Tex. Bus. Corp. Act, art. 604A(4) [corporate liquidation] and appears to not be prohibited under Texas law.")

Based on existing Fifth Circuit precedent and on Texas partnership law, the Court finds that a dissolved limited partnership is eligible to seek relief under Chapter 11 when the relief sought is a liquidation. The Court rejects the dictum in *C–TC* and the holding in *Hagerstown* that an entity must at least have the ability to be reinstated under state law, and, thus, the ability to reorganize under Chapter 11 to be eligible for relief under Chapter 11, even if the partnership is seeking to liquidate under Chapter 11. Although a dissolved limited partnership under Texas law that has been ordered by a state court to wind up its affairs and liquidate would not appear to be eligible to seek to reorganize under Chapter 11, the Debtors here seek to *liquidate* under Chapter 11. Neither the cases from the Fifth Circuit nor Texas partnership law would prevent them from doing so.

### *Were the Bankruptcy Petitions Filed in Bad Faith?*

The Movants seek a dismissal of these bankruptcy cases on the grounds that the Receiver filed the petitions in bad faith. They allege that the Receiver filed the petitions shortly before a hearing was scheduled in state court on a motion to disqualify him as Receiver and that this constitutes bad faith. Section 1112(b) of the Bankruptcy Code, which provides that a Chapter 11 case may be dismissed "for cause" has been interpreted to include the lack of good faith in the filing of the petition as a "cause" for dismissal. *See In re Humble Place Joint Venture,* 936 F.2d 814, 816–17 (5th Cir.1991)(citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1072 (5th Cir.1986)). In determining whether the filing of a Chapter 11 petition was in good faith, this Court must look at "the debtor's financial condition, motives, and the local financial reali-

ties." *Little Creek,* 779 F.2d at 1072. To find bad faith, the court must find that the facts surrounding the filing of the petition are particularly egregious. *See id.* at 1073. Here, the only allegation of bad faith is that the Receiver filed the petitions to avoid being disqualified in the state court litigation. Having heard the testimony of the Receiver and reviewed the facts of this case, the Court finds that this allegation is not a fair representation of the Receiver's motives in filing the petitions. The Receiver testified that he filed the petitions on behalf of the debtors because he was unable to sell the property of the Debtors through the state court receivership even though he had contracts for the sale of the properties at above market prices. The Receiver testified that because of the contentious relationships among the parties and because state law, unlike bankruptcy law, did not provide an easy mechanism, if any, for selling the property free and clear of liens, claims and encumbrances, he found it particularly difficult to liquidate the Debtors assets in the state court proceedings. The Receiver filed the petitions to better facilitate the sale of the assets, which was his court-appointed duty. He testified that he did not file the petitions to avoid being disqualified. The Court found him to be credible, and the fact that he almost immediately filed a motion for the appointment of a Chapter 11 trustee to take over in these bankruptcy cases indicates that he was agreeable to stepping aside for the benefit of the Debtors and was not trying to stay in place as the Receiver. The Court finds that insufficient evidence exists to find that the Receiver filed these petitions in bad faith. In fact, the Court finds that the Receiver's actions were entirely consistent with and in furtherance of his duties as Receiver over these Debtors.

*Should This Court Abstain Pursuant to 11 U.S.C. § 305?*

As an alternative to dismissal, the Movants ask this Court to abstain from exercising its jurisdiction over these bankruptcy cases pursuant to § 305(a) of the Bankruptcy Code. Section 305(a) provides, in pertinent part,

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if–
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. § 305(a)(1). Abstention or dismissal under § 305 is an extraordinary remedy and should only be exercised when the court finds that the interests of both the debtors and the creditors would be better served by abstention. *See In re Xacur,* 216 B.R. 187, 195 (Bankr.S.D.Tex.1997)(citing *In re Eastman,* 188 B.R. 621, 624 (9th Cir. BAP 1995)). Here, the uncontroverted testimony of the Receiver is that he was having extreme difficulty in liquidating the assets in the state court receivership actions even though he had contracts for the sale of the assets at above market prices. The Movants, who have the burden of establishing the appropriateness of this Court exercising the extraordinary remedy of abstention, *see In re Sherwood Enters., Inc.,* 112 B.R. 165, 167 (Bankr.S.D.Tex.1989), offered little or no evidence in support of abstention. The Movants raise the Receiver's lack of authority to file the petitions and the predominance of state law issues as grounds for abstention. Because the Court has already ruled that the Receiver had authority to file the bankruptcy petitions on behalf of the Debtors, *see, supra,* this issue does not support abstention. Neither would the fact that state law issues would arise in the context of the

bankruptcy cases be sufficient grounds for this Court to decline to exercise its jurisdiction. The only test in deciding whether abstention is proper is whether the abstention is in the best interests of both the debtors and creditors. As noted above, the evidence presented at the hearing indicated that, because he could not sell assets free and clear in the state court, the Receiver was having great difficulty in liquidating the assets of the Debtors. The litigation in state court was contentious and had taken quite a bit of the parties' time and energy, without much progress. The Receiver's attempts to consummate contracts were thwarted. The passage of time hurts the Debtors and the creditors. Sending the Debtors back to state court would only be sending them and their creditors back to the quagmire from which they came.

This Court has the power under the Bankruptcy Code to approve the sale of assets free and clear of interests. *See* 11 U.S.C. § 363(f). The process is rather expeditious and may be accomplished in as little as 20 days, even if an objection is filed. *See* Fed. R. Bankr.P.2002(a). Therefore, considerations of efficiency and economy weigh in favor of this Court maintaining jurisdiction. *See Central Mortgage & Trust, Inc. v. State of Texas (In re Central Mortgage & Trust, Inc.)*, 50 B.R. 1010, 1021 (S.D.Tex.1985)("In evaluating the best interests of the creditors and the debtor, efficiency and economy of administration are primary considerations.").

The Movants simply have not met their burden of proving that the Debtors and their creditors would be better served by abstention or dismissal. The Court will deny the Movants' motions to abstain pursuant to § 305(a)(1).